UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jaron Stephenson, on behalf of himself and all others similarly situated, | ) ) ) ) ) | No.:  1:25-cv-08559-JLR |
| Plaintiff, | ) ) | |
| vs. | ) ) | **DECLARATION OF** |
| Ouraring Inc. | ) ) | **BENJAMIN STENDAHL** |
| Defendant. | ) ) ) ) | |

I, Benjamin Stendahl, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am over the age of 18, competent to testify, and have personal knowledge of the facts stated herein.

2. I am a Senior Director of Software Engineering at Ouraring Inc. ("Oura").  My background is in software engineering, and I have over 20 years of experience in software and web development. I hold a Bachelor of Business Administration degree in Computer Information Systems from Texas State University, which I obtained in 2006.

3. Throughout my career, I have worked for major companies such as Peloton Interactive, iHeartMedia, and Google.  Through my experience, I have developed a deep understanding of software development, technology infrastructure, and web development, which I now apply in my role at Oura. As a result, I possess complete supervisory authority over the company's website, www.ouraring.com (the "Website"), which is maintained, operated, and hosted by Oura's affiliate Oura Health Oy.

4.      I submit this Declaration in support of Oura's Motion to Dismiss Plaintiff's Class Action Complaint ("Complaint").

5.      I understand that on December 12, 2025, Oura was served with the Complaint for violations of the Americans with Disabilities Act, Violations of the New York City Human Rights Law, the New York State Human Rights Law, the New York State Civil Rights Law, and Declaratory Relief.  The Complaint indicates it was filed on October 17, 2025.  The Complaint alleges that certain aspects of Oura's Website are not in compliance with Web Content Accessibility Guidelines 2.1 Level AA (the "WCAG 2.1 Guidelines").

6.      Oura products can be purchased directly from Oura's Website or from third-party retailers like Best Buy, Target, and Amazon.

7.      Oura does not operate any brick-and-mortar locations where customers can shop in person.

8.      Oura does not publish software or firmware updates for its products through its Website.  Information about Oura's product launches and support updates are available through its Website, app, and other sources such as social media and third-party new sources.

9.      I personally reviewed the Complaint in this matter. I understand that in the Complaint, Plaintiff claims to have visited the Website on August 12, 2025 and August 15, 2025 "intending to purchase the Oura Ring Horizon model in Silver and evaluate subscription tiers, including the Premium plan offering advanced sleep and stress analytics."

10.     Part of my job for Oura involves overseeing the accessibility of the Website. Oura has been working on Website accessibility since before Plaintiff filed his Complaint in October 2025.

2

11.     For example, in the spring of 2025, Oura engaged an external website accessibility vendor Selko Digital to evaluate and help improve its Website accessibility.  Selko Digital is a Finland-based website developer and designer with a specific focus on making websites accessible for all users.  Selko Digital provided Oura with a website accessibility audit report dated July 23, 2025.

12.     After receiving the Selko Digital report, Oura invested substantial time and resources to address the identified issues.  Since July 23, 2025, Oura has conducted many rounds of accessibility testing and remediation, as well as additional tests as necessary.

13.     Oura remediated the accessibility issues identified in the Selko Digital July 2025 report.  Specifically, it:

a.   Added alternative text for payment options listed in the global footer

b.   Added focusable video controls to videos which show visible controls

c.   Updated usability for tabbing indicator when moving through scroll-animated sections

d.   Redeveloped membership modal/prompt on the product description page for better keyboard navigation including removing keyboard traps and improved context for form controls, and

e.   Redeveloped long-form videos to remove embedded subtitles in favor of subtitle tracks that can make videos more universal for different regions and for closed captioning.

14.     Separately from the Selko Digital report, after receiving Plaintiff's Complaint in December 2025, Oura investigated Plaintiff's claim that accessibility issues prevented him from

accessing the Website to determine whether the Website required remediation and whether there were areas that could be more accessible.  Oura also researched WCAG 2.1 Guidelines.

15.    Oura then continued to improve the Website's accessibility with a focus on the issues raised in the Plaintiff's Compliant, which has included re-developing Oura's Website and reviewing and implementing new accessibility monitoring processes.

16.    In response to the allegations in the Complaint, Oura went into the Website's code and manually removed access barriers identified as impacting the Plaintiff.

17.    Specifically, Oura reviewed the Website's code and manually removed all barriers that would prevent the Plaintiff from purchasing a Ring or membership, reviewing product specifications, or accessing the Oura terms of use.

18.    On January 21, 2026, Oura ran a manual screen reader test using VoiceOver and determined that no accessibility issues existed that would prevent Plaintiff from purchasing a Ring on the Oura Website.  In addition to the scan, Oura has also manually tested the purchase flow to ensure that there are no accessibility issues currently preventing a visually impaired individual from purchasing an Oura Ring.

19.    Additionally, I personally downloaded the Web Accessibility Evaluation (WAVE) tool.  Automated accessibility scans tools like WAVE are useful for catching issues in semantic markup or ingesting media elements that require assistive technologies.  However, automated scans like WAVE are not perfect and can struggle to accurately assess certain website elements like contrast because they can't pick up on complicated backgrounds nor can they consistently discern layers.  As a result a WAVE scan alone cannot establish whether a website is accessible to the blind or visually impaired.

20.    I personally used the WAVE tool to help confirm that all of the issues identified in the Complaint as impacting the Plaintiff have been remedied.

21.    Using the WAVE tool, an eyedropper tool, and manual testing, I personally confirmed that:

a.    Empty buttons lacking descriptive labels have been given descriptive labels;

b.    Empty links that provide no context to screen readers have been added or deleted;

c.    Missing form labels obstructing navigation of interactive fields have been added;

d.    Images missing alternative text have been updated with text;

e.    Broken ARIA references disrupting semantic structure have been added; and

f.    Contrast errors that fail WCAG 1.4.3 minimum ratio standards have been fixed.

22.    Oura has invested significant time and resources in improving the Website's accessibility. Through the testing and revision process, I have ensured that each violation alleged in the Complaint to have impacted the Plaintiff has been remedied by redesigning the Website as necessary.

23.    Oura is committed to Website accessibility now and in the future.  In addition to fixing identified issues, Oura has recently implemented new accessibility monitoring processes. This includes an automatic agent that analyzes Oura's codebase for accessibility issues.  It also includes nightly accessibility regression testing to help capture additional issues.  In addition to

the automated testing, Oura also will continue periodic manual accessibility testing.  These tests include targeted testing of the areas of potential accessibility concern noted in the Complaint.

24.     As a result of these efforts, all accessibility issues alleged in the Complaint to have impacted Plaintiff have now been resolved and remedied such that those issues are now compliant with WCAG 2.1 Guidelines.

25.     Oura will continue to audit the Website to ensure it is up to date and fully accessible, including as necessary compliant with WCAG 2.1 Guidelines.

26.     Oura will continue to monitor the Website on an ongoing basis in compliance with WCAG 2.1 Guidelines so that the Website will be accessible to all, including the blind and visually impaired.

27.     Oura is committed to ensuring that its Website is up to date and compliant with all relevant standards and guidelines, including WCAG 2.1 Guidelines, in order to allow the Website to be accessible to all, including the blind and visually impaired.  Due to the changes made to the Website and the use of monitoring, I have no expectation that the violations alleged in the Complaint to have impacted the Plaintiff will recur.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and that this Declaration was executed this 9th day of March, 2026, in Minneapolis, Minnesota.

*s/Benjamin Stendahl*
Benjamin Stendahl

42164132v1

6