**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JARON STEPHENSON, et al.,

                Plaintiff,

v.

OURARING INC.,

                Defendant.

Court File No.: 25-CV-08559 (JLR)

ORAL ARGUMENT REQUESTED

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**
**FIRST AMENDED CLASS ACTION COMPLAINT**

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................................1

FACTUAL BACKGROUND ..................................................................................................3

ARGUMENT ...........................................................................................................................7

    I.       THE APPLICABLE LEGAL STANDARD. .............................................................7

    II.     PLAINTIFF FAILS TO PLAUSIBLY ALLEGE STANDING. ...........................11

          1.      Plaintiff Has Not Plausibly Alleged an Intent to Return ...........................12

          2.      Plaintiff's Copy-Paste Allegations Show There Was No Injury. ..............14

          3.      Plaintiff Cannot Show Injury Resulting From Website Barriers Because Oura Products Are Widely Available on Third-Party Websites and In Stores. ..............................................................................14

          4.      Plaintiff Fails to Specify Where or How He Encountered the Alleged Barriers. ....................................................................................17

    III.    PLAINTIFF'S CLAIMS ARE MOOT BECAUSE OURA HAS REMEDIED ALL ALLEGED ADA VIOLATIONS. ...........................................18

    IV.    DEFENDANT'S WEBSITE IS NOT A PUBLIC PLACE OF ACCOMMODATION. .........................................................................................24

    V.    PLAINTIFF LACKS STANDING TO BRING HIS STATE AND CITY CLAIMS. .......................................................................................................25

CONCLUSION.......................................................................................................................25

CERTIFICATE OF WORD COUNT......................................................................................26

## TABLE OF AUTHORITIES

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
        671 F.3d 140 (2d Cir. 2011)...............................................................................7

*Ashcroft v. Iqbal*,
        556 U.S. 662, 679 (2009)...................................................................................8

*Bernstein v. City of New York*,
        621 F. App'x 56, 58–59 (2d Cir. 2015) ..........................................................9, 13

*Black v. 3 Times 90, Inc.*,
        No. 23-cv-06235 (NCM) (CLP), 2025 WL 1114610,
        at *3 (E.D.N.Y. Apr. 15, 2025)......................................................................13, 15

*Calcano v. Swarovski N. Am. Ltd.*,
        36 F.4th 68, 75 (2d Cir. 2022) ..................................................................8, 9, 11, 12

*Campbell v. Greisberger*,
        80 F.3d 703, 706 (2d Cir. 1996)......................................................................20

*Carter v. HealthPort Techs., LLC*,
        882 F.3d 47 (2d Cir. 2016).............................................................................8

*Clear Channel Outdoor, Inc. v. City of New York*,
        594 F.3d 94, 110 (2d Cir. 2010)....................................................................20, 21

*Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.À.R.L.*,
        790 F.3d 411 (2d Cir. 2015)...........................................................................8, 20

*Diaz v. Kroger Co.*,
        No. 18 Civ. 7953, 2019 WL 2357531 (S.D.N.Y. Jun. 4, 2019)...................7, 20, 21, 22, 23

*Dominguez v. Athleta LLC*,
        No. 19 Civ. 10168 (GBD), 2021 WL 918314 (S.D.N.Y. Mar. 10, 2021) ..........................9

*Dominguez v. Grand Lux Cafe LLC*,
        No. 19-CV-10345 (MKV), 2020 WL 3440788 (S.D.N.Y. June 22, 2020) ...................9, 18

*Fernandez v. Gainful Health, Inc.*,
        No. 25-cv-2696 (AS), 2025 WL 3538339, at *3 (S.D.N.Y. Dec. 10, 2025) ....................24

*F.O. v. New York City Dept. of Educ.*,
        899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).......................................................21

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
        528 U.S. 167, 189 (2000)................................................................................20

*Genesis Healthcare Corp. v. Symczyk*,
  569 U.S. 66, 71, 72 (2013)..................................................................................................20

*Guglielmo v. Nebraska Furniture Mart, Inc.*,
  No. 19 Civ. 11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020).............21, 22, 23

*Harty v. Greenwich Hosp. Grp., LLC*,
  536 F. App'x 154, 155 (2d Cir. 2013) ..................................................................................9

*Harty v. West Point Realty, Inc.*,
  28 F.4th 435 (2d Cir. 2022) ................................................................................. 9-10, 12

*Hennessy ex rel. Hennessy v. Poetica Coffee Inc.*,
  No. 21-cv-05063, 2022 WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022) ....................... 13-14

*Katz v. Donna Karan Co., LLC*,
  872 F.3d 114 (2d Cir. 2017)..................................................................................................8

*Kennedy v. Floridian Hotel, Inc.*,
  998 F.3d 1221, 1233 (11th Cir. 2021) ..................................................................................8

*Kreisler v. Second Ave. Diner Corp.*
  731 F.3d 184 (S.D.N.Y. 2013)..............................................................................................8

*Kreisler v. Humane Soc'y of New York*,
  No. 16 Civ. 8177 (LGS), 2018 WL 4778914 (S.D.N.Y. Oct. 3, 2018) .............................25

*Loadholt v. Dungarees, Inc.*,
  No. 22-CV-4699 (VEC), 2023 WL 2024792 (S.D.N.Y. Feb. 15, 2023) .....................12, 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 560 (1992)......................................................................................................9

*Makarova v United States*,
  201 F.3d 110, 113 (2d Cir. 2000)..........................................................................................7

*Mejia v. High Brew Coffee Inc.*,
  No. 22-CV-03667 (LTS), 2024 WL 4350912 at *6 (S.D.N.Y. Sept. 30, 2024)................24

*Sookul v. Fresh Chan Threads, Inc.*,
  754 F. Supp. 3d 395 (S.D.N.Y. 2024)........................................................................ 24-25

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540, 1547 (2016)..........................................................................................9, 20

*Tavarez v. Extract Labs Inc.*,
No. 21-CV-9916 (JPO), 2023 WL 2712537 (S.D.N.Y. Mar. 30, 2023)................ 21-22, 23

*Tavarez v. Moo Organic Chocolates, LLC*,
623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022).........................................................................12

*Toro v. General Store, LLC*,
No. 1:22-cv-6130 (MKV), 2023 WL 4624690 (S.D.N.Y. July 19, 2023).......10, 11, 15, 17

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)......................................................................................................9, 10, 18

*Velazquez v. Everlast Worldwide, Inc.*,
No. 22-CV-9211 (VSB), 2022 WL 16745767 (S.D.N.Y. Nov. 7, 2022) ..........................12

*Wahab v. Surya Nature, Inc.*,
No. 1:24-cv-384 (MKV), 2025 WL 872112, at *3 (S.D.N.Y. Mar. 20, 2025).............11,17

**Rules:**

Fed. R. Civ. P. 12(b)(1)..................................................................................................1, 7, 8, 18, 20

Fed. R. Civ. P. 12(b)(6)......................................................................................................1, 7, 18

Defendant Ouraring Inc. ("Oura") submits this Memorandum of Law in support of its Motion to Dismiss the Plaintiff's First Amended Class Action Complaint ("Am. Compl.") (Dkt. #25), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) ("Motion").

## **INTRODUCTION**

This lawsuit is one of at least 50 lawsuits that Plaintiff's counsel has filed in this Court and the other U.S. District Courts of New York since January 1, 2024, alleging that various companies' websites violate the American with Disabilities Act ("ADA") because they purportedly are not accessible to the visually impaired. (*See* Declaration of Devon Holstad ("Holstad Decl."), Ex. A.) At least five of those (including this lawsuit) were on behalf of Plaintiff Stephenson (the "Carbon Copy Complaints"). (*Id.*)  It is readily apparent that this lawsuit is just one in a deliberate and systematic campaign to visit as many random websites as possible in order to identify alleged access barriers for the visually impaired.  All of Plaintiff's Carbon Copy Complaints contain virtually the exact same general factual allegations and claims, without specific details as to how any of the websites are non-compliant with the ADA, how the various defendant companies caused his alleged injuries, why he was visiting the targeted websites in the first place, or whether he has specific intentions to return to the various websites other than for litigation purposes.

Here, on October 16, 2025, Plaintiff filed his Class Action Complaint alleging violations of the ADA and New York State and City Human Rights Laws. (Dkt. #1 ("Original Complaint").) Following Defendant's Motion to Dismiss, Plaintiff filed an Amended Complaint on March 16, 2026. (Dkt. #25.)  Notably, Plaintiff's Amended Complaint does not change the substance of the allegations originally raised by Plaintiff.  Plaintiff alleges that he is visually impaired and that he was somehow prevented from accessing certain aspects of Oura's website ("Website") due to alleged barriers in the site's accessibility and functionality for the visually impaired.  (*See* Am. Compl. ¶¶ 7, 8.)  Like his other Carbon Copy Complaints, Plaintiff's Amended Complaint is almost

identical to the Original Complaint and relies on broad-based, nondescript allegations of access barriers that Plaintiff does not causally connect to Defendant's conduct. For example, Plaintiff falsely claims that the Website "is the exclusive source for purchasing the Oura Ring." (Am. Compl. ¶ 30.) This is demonstrably false, as a simple internet search reveals that the Oura Ring can be purchased at Target, Best Buy, Amazon, and other major retailers across the country. All of Plaintiff's claims fail for the reasons set forth below.

First, Plaintiff has not suffered a cognizable harm sufficient to establish standing.

Second, Plaintiff's claims are moot. Even before Oura received a copy of Plaintiff's Original Complaint, Oura prioritized ADA compliance. (Declaration of Benjamin Stendahl ("Stendahl Decl.") ¶ 10.) Oura was actively evaluating and improving its Website accessibility functions in the spring of 2025. (*Id*. ¶ 11.) As part of this work, Oura hired a third-party vendor to undertake an accessibility audit and provide a detailed report of any issues. (*Id*.) In the summer of 2025, Oura began the meticulous process of investigating, fixing, and testing the issues identified in the third-party report. (*Id*. ¶¶ 12-13.) After receiving the Complaint, Oura undertook additional website assessments to ensure that the Website was accessible to the visually impaired. (*Id*. ¶¶ 14-15.) Oura assessed the Website's accessibility based on testing results, including fixing areas of the Website where testing reflected the potential for less than 100% accessibility. (*Id*. ¶¶ 18-25.) Oura's Senior Director of Software Engineering also personally reviewed the allegations in Plaintiff's Complaint and Amended Complaint (*id*. ¶¶ 9, 22), and Oura revised the Website's code to address specific areas of the Website that were alleged to be barriers to the Plaintiff.[1]

---

[1] Even though the Complaint does not properly allege any specific harm allegedly suffered by Plaintiff, Oura reviewed the Complaint and exhibits and revised the Website's code to specifically address the areas noted as potentially lacking accessibility. (Stendahl Decl. ¶¶ 14-20.)

2

(*Id*. ¶¶ 15-17, 22.)  Through this process, Oura has confirmed that the Website barriers alleged to have impacted Plaintiff are resolved and will not recur.  (*Id*. ¶¶ 17, 20, 22, 25.)

The original Motion to Dismiss included a Declaration from Stendahl with an explanation of his and Oura's work, as well as third-party work, which specifically addressed the Original Complaint's allegations of barriers.  (*See generally* Stendahl Decl.)  Following the submission of Oura's Motion to Dismiss, Plaintiff did not include any factual allegations in his Amended Complaint suggesting that those access barriers still existed.  Indeed, Plaintiff did not change the substance of his allegations in the Amended Complaint.  Instead, Plaintiff added conclusory allegations that Plaintiff hired an expert and that this expert "determined that the accessibility barriers Plaintiff encountered still exist, the website remains inaccessible to blind users, Defendant's testing methodology is insufficient and unreliable, Defendant has not demonstrated WCAG 2.1AA conformance and the violations are ongoing, systemic and not remedied."  (Am. Compl. ¶ 54.)  These allegations are unsupported by any declaration or factual support, such as the report purportedly conducted.  Nonetheless, following the Amended Complaint, Stendahl again reviewed the allegations as to the specific accessibility barriers alleged by Plaintiff.  (Stendahl Decl. ¶ 22.)  Stendahl reviewed the Website's code to ensure that the Website was accessible to the visually impaired in the ways alleged as lacking in the Amended Complaint.  (*Id*.)  This review process confirmed that all Website barriers alleged to have impacted the Plaintiff are resolved and will not recur.  (*Id*.)

As such, Plaintiff lacks standing to bring his claims and, in any event, Plaintiff's claims are moot.  Thus, the Court lacks subject matter jurisdiction and Plaintiff's claims should be dismissed.

**FACTUAL BACKGROUND**

Oura sells wearable health related devices and operates the Website www.ouraring.com through which an individual may shop for and purchase such products.  (*See* Am. Compl. ¶¶ 29-

3

30.)  Oura products can be purchased directly from Oura's Website or from third-party retailers like Best Buy, Target, and Amazon.  (Stendahl Decl. ¶ 6.)  Oura does not operate any brick-and-mortar locations where customers can shop in person.  (*Id*. ¶ 7.)

Plaintiff alleges that he is a visually impaired individual who uses screen reading software to access information located on websites.[2]  (Am. Compl. ¶ 27.)  For screen-reading software to function, the information on the website must be coded so as to allow the screen reader to render the visual information on the website into text.  (*Id*. ¶ 28.)  W3C is an international website standards organization that publishes website accessibility guidelines for blind and visually impaired users known as the Web Content Accessibility Guidelines ("WCAG").  (*Id*. ¶ 24.)  Plaintiff alleges that in 2025 he accessed Oura's Website and has "been denied access to the equal enjoyment of goods and services, during the relevant statutory period."  (*Id*. ¶ 55.)  He generally alleges that he was unable to purchase the Oura Ring Horizon model and subscribe to a recurring service, but fails to identify the specific pages he browsed on the Website that prevented him from obtaining such access.  (*Id*. ¶ 33.)  Plaintiff further alleges that when he accessed the Website, he was denied access as a visually impaired individual because the Website included barriers preventing him from enjoying access to the Website's content equally to that of a sighted user. (*Id*. ¶ 22.)

Even before being served with the Complaint, Oura was actively working ensure that its Website was fully accessible to the visually impaired. (Stendahl Decl. ¶ 11-13.)  In the spring of 2025, Oura engaged website accessibility vendor Selko Digital to evaluate and help improve the accessibility of the Website.  (*Id*. ¶ 11.)  Oura received a report from Selko Digital dated July 23, 2025 and invested substantial time and resources to address the identified issues.  (*Id*. ¶ 12.)  Oura

---

[2] For purposes of this Motion to Dismiss only, and in accordance with the standard of review under Fed. R. Civ. P. 12, the allegations in Plaintiff's Complaint are assumed to be true.

4

remediated the accessibility issues identified in the Selko Digital July 2025 report.  (*Id.* ¶ 13.)

Specifically, Oura:

1. Added alternative text for payment options listed in the global footer;

2. Added focusable video controls to videos which show visible controls;

3. Updated usability for tabbing indicator when moving through scroll-animated sections;

4. Redeveloped membership modal/prompt on the product description page for better keyboard navigation including removing keyboard traps and improved context for form controls; and

5. Redeveloped long-form videos to remove embedded subtitles in favor of subtitle tracks that can make videos more universal for different regions and for closed captioning.

(*Id.*)

In addition, after receiving the Original Complaint in December 2025, Oura continued to improve the Website's accessibility.  (*Id.* ¶ 14.)  Oura independently researched WCAG 2.1 Guidelines and investigated Plaintiff's specific claims that accessibility issues prevented him from accessing certain parts of the Website in order to determine whether there were areas that could be more accessible or that required remediation.  (*Id.*)

With a focus on the issues raised in the Complaint, Oura then re-developed its Website and reviewed and implemented new accessibility monitoring processes.  (*Id.* ¶ 15.)  Oura specifically addressed all areas of the Website that were identified as barriers to Plaintiff in the Complaint and ensured those areas' accessibility.  Oura went into the Website's code and manually removed all access barriers identified as having impacted the Plaintiff, including barriers that would prevent

Plaintiff from purchasing a Ring or membership, reviewing product specifications, or accessing the Oura terms of use.  (*Id.* ¶¶ 16-17.)

On January 21, 2026, Oura ran a manual screen reader test using VoiceOver and determined that no accessibility issues existed that would prevent Plaintiff from purchasing a Ring on the Oura Website.  (*Id.* ¶ 18.)  In addition to the screen reader test, Oura also manually tested the purchase flow to ensure that there are no accessibility issues currently preventing a visually impaired individual from purchasing an Oura ring.  (*Id.*)

Oura's Senior Director of Software Engineering also re-assessed and confirmed that all areas of the Website that were identified in the Complaint as impacting Plaintiff were remedied. (*Id.* ¶¶ 19-21.)  First, he used the Web Accessibility Evaluation tool to confirm:

1.  Empty buttons lacking descriptive labels had been given descriptive labels;

2.  Empty links that provide no context to screen readers had been added or deleted;

3.  Missing form labels obstructing navigation of interactive fields had been added;

4.  Images missing alternative text had been updated with text;

5.  Broken ARIA references disrupting semantic structure had been added; and

6.  Contrast errors that fail WCAG 1.4.3 minimum ratio standards had been fixed.

(*Id.* ¶ 21.)  The testing and Website revision process shows that none of the barriers alleged to have impacted the Plaintiff remain.  (*Id.* ¶¶ 22-23, 25.)

Likewise, after receiving the Amended Complaint in March 2026, Oura again reviewed the Website for any accessibility issues which needed further attention.  (*Id.* ¶ 22.)  Oura again investigated Plaintiff's specific claims that accessibility issues prevented him from accessing certain parts of the Website and determined that none of the barriers alleged to have impacted the Plaintiff remain.  (*Id.*)

In addition, Oura has instituted a plan to prevent any future reoccurrence.  First, Oura has committed to continued auditing of its Website to ensure it is fully accessible.    (*Id*. ¶ 26.) Furthermore, Oura has developed new accessibility monitoring processes that will continually identify any accessibility issues that might arise.  (*Id*. ¶¶ 15, 24.)  This includes an automatic agent that analyzes Oura's codebase for accessibility issues, as well as nightly accessibility regression testing to help capture additional issues.  (*Id*. ¶ 24.)  In addition to the automated testing, Oura also will also continue periodic manual accessibility testing.  (*Id*.)

These procedures guarantee that the Website will be continually monitored to ensure that it remains accessible.  (*Id*. ¶¶ 25-26.)  There is no expectation that the violations alleged in the Complaint will recur.  (*Id*. ¶ 28.)  Oura is committed to ensuring that its Website is up to date and compliant with all relevant standards and guidelines, including WCAG guidelines as necessary, in order to allow the Website to be accessible to all, including the blind and visually impaired.  (*Id*.)

## ARGUMENT

## I.    THE APPLICABLE LEGAL STANDARD.

Courts in the Second Circuit review a facial challenge to a Court's jurisdiction under Rule 12(b)(1) using the same standard applied in a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (stating in a case involving "a facial attack to the court's jurisdiction" that in a "Rule 12(b)(1) motion to dismiss, [the plaintiff] must allege facts that affirmatively and plausibly suggest that it has standing to sue").  To survive a Rule 12(b)(1) motion, "a plaintiff must show by a preponderance of the evidence that subject matter jurisdiction lies over the dispute." *Diaz v. Kroger Co.*, No. 18 Civ. 7953, 2019 WL 2357531, at \*2 (S.D.N.Y. June 4, 2019) (citing *Makarova v United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  The Second Circuit recognizes that "a defendant is permitted to make a fact-based Rule 12(b)(1) motion" to dismiss, defined as a jurisdictional objection

7

"proffering evidence beyond" the complaint and its exhibits as a basis for dismissal. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). To defeat a defendant's "fact-based" Rule 12(b)(1) motion, "plaintiffs must" either (1) "come forward with evidence of their own to controvert that presented by the defendant," or (2) "rely on the allegations in the[ir p]leading," but only if the defendant's proffer fails to "contradict plausible allegations that are themselves sufficient to show standing." *Katz v. Donna Karan Co., LLC*, 872 F.3d 114, 119 (2d Cir. 2017).

In addition, while a Court will generally accept the truth of a plaintiff's allegations at the motion to dismiss stage, the plaintiff still "bears the burden of 'alleg[ing] facts that affirmatively and plausibly suggest that [he] has standing to sue." *Cortland Street Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 417 (2d Cir. 2015). Assessing plausibility is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," and the Court is not required to credit "a legal conclusion couched as a factual allegation" or a "'naked assertion[]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The central inquiry is not whether a complaint pleads magic words amounting to a bare assertion of injury, but if, "examined under the 'totality of all relevant facts,' the plaintiff plausibly alleges 'a real and immediate threat of future injury.'" *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (quoting *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1233 (11th Cir. 2021)).

A plaintiff bringing an ADA claim bears the particular burden of establishing standing by showing that: (a) he has suffered an injury-in-fact; (b) it is reasonable to infer that the complained-of discrimination will continue; and (c) it is reasonable to infer that plaintiff intends to return to the defendant's place of business in the future. *See Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2d Cir. 2013). The Supreme Court has repeatedly emphasized that the alleged injury

8

in fact "must affect the plaintiff in a personal and individual way," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 fn.1 (1992), and—crucially to this case—"must actually exist" in the sense of being "'real' and not 'abstract.'" *Spokeo v. Robins*, 578 U.S. 330, 340 (2016). In this regard, a bare or technical violation of the ADA, without more, does not equate to a concrete injury suffered by any litigant. Rather, a plaintiff must show a current or past harm beyond the statutory violation itself. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 424-30 (2021).

In addition, an ADA plaintiff "may not rely solely on past injury, but also must establish that she is likely to be harmed again in the future in a similar way . . . allegations of *possible* future injury are not sufficient." *Calcano*, 36 F.4th at 74 (emphasis in original) (internal quotations omitted). To establish the likelihood of such future harm, "[t]he plaintiff must allege specific facts that 'show a plausible intention or desire to return to the place but for the barriers to access.'" *Dominguez v. Grand Lux Cafe LLC*, No. 19-CV-10345 (MKV), 2020 WL 3440788, at *3 (S.D.N.Y. June 22, 2020); *see also Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2d Cir. 2013) (summary order) (pleading that one travels frequently does not show intent to return to a specific hotel); *Bernstein v. City of New York*, 621 F. App'x 56, 58–59 (2d Cir. 2015) (summary order) (alleging that one has visited Central Park many times in the past is not sufficient to show intent to return in the future); *Dominguez v. Athleta LLC*, No. 19 Civ. 10168 (GBD), 2021 WL 918314, at *3 (S.D.N.Y. Mar. 10, 2021) (fact that plaintiff filed "at least 24 nearly identical complaints against other retailers . . . undermines the sincerity of Plaintiff's alleged intent to return").

In *Harty v. West Point Realty, Inc.*, the Second Circuit rejected the "informational injury" theory of standing on which Plaintiff appears to rely here, holding that even if an ADA plaintiff can allege that the defendant's website failed to provide information to which he/she is entitled by

9

the ADA, he/she must also allege "downstream consequences from failing to receive the required information . . . .  In other words, [Plaintiff] must show that he has an interest in using the information . . . beyond bringing [his] lawsuit."  28 F.4th 435, 444 (2d Cir. 2022) (internal quotations omitted); *see also TransUnion*, 594 U.S. at 441-42.  The plaintiff in *Harty* was a so-called "tester" who merely browsed the websites of potential defendants for the purpose of determining whether those sites complied with the ADA, without ever having any intention of becoming a real customer himself.  Because the *Harty* plaintiff had not plausibly alleged a bona fide interest in visiting the defendant's hotel, he had failed to establish Article III standing to sue. *See Harty*, 28 F.4th at 444.

Thus, in the website context, Plaintiff must establish "non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the particular website, that the plaintiff intends to return to the website."  *Toro v. Gen. Store, LLC*, No. 1:22-cv-6130 (MKV), 2023 WL 4624690, at *3 (S.D.N.Y. July 19, 2023).  Where a complaint contains "bare, conclusory statements and lacks additional factual allegations that would allow the Court plausibly to infer that Plaintiff intends to return to Defendant's website," standing does not exist.  *Id*.  The *Toro* case is particularly instructive here.  In the *Toro* case, the plaintiff alleged that she visited the defendant's website twice.  *Id*.  The Court found it "conspicuous" that the visits occurred a week before the original complaint was filed and the second visit occurred three days before the amended complaint was filed.  *Id*.  (Notably, the Plaintiff here also alleges two visits: one on August 12, 2025, the second just three days later.  *See* Am. Compl. ⁋ 33.)  The Court further noted that the plaintiff's allegations were "made all the more conspicuous by the fact that in those intervening months—i.e., from July to December of 2022—Plaintiff, through the same law firm representing

10

her in [the *Toro*] action, filed at least 31 virtually identical complaints in this District." *Toro*, 2023 WL 4624690, at *3. Likewise here, Plaintiff filed several other nearly identical ADA website complaints within weeks of his Complaint against Oura. (Holstad Decl. ¶¶ 2-3.) Because the Toro plaintiff in the *Toro* case relied on a "conclusory allegation of an intent to return," the plaintiff failed to adequately alleged standing. *Toro*, 2023 WL 4624690, at *4.

## II.    **PLAINTIFF FAILS TO PLAUSIBLY ALLEGE STANDING.**

"Courts in this Circuit, including this Court, have repeatedly dismissed similar complaints for lack of standing." *Wahab v. Surya Nature, Inc.*, No. 1:24-cv-384 (MKV), 2025 WL 872112, at *3 (S.D.N.Y. Mar. 20, 2025) (slip copy) (collecting cases). The Amended Complaint, like the Carbon Copy cases before (and after) it, must be assessed in light of its nature as a "cut-and-paste and fill-in-the-blank pleading[]." *Calcano*, 36 F.4th at 77. As the Court in *Toro v. General Store* stated, "the frequency with which Plaintiff has filed these near-identical complaints is arresting, and should not be ignored." *Toro*, 2023 WL 4624690, at *3. "Indeed, the Second Circuit has explained that when a series of 'carbon-copy complaints' have been filed, courts should take notice of 'the broader context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings.'" *Id.* (citing *Calcano*, 36 F.4th at 77). Oura is cognizant that Plaintiff does not appear to be a serial litigant to the same extent as the one in *Toro*, but the Court cannot ignore that Plaintiff's counsel has filed approximately fifty similar cases in just over two years. Thus, this Court must "review[] Plaintiff's complaint with a critical eye to ensure that []he seeks relief for harms honestly endured, and not merely manufactured." *Id.* In *Calcano*, the Second Circuit rejected the ADA plaintiffs' "Mad-Libs-style complaints"—which arose out of certain retail store defendants' failure to carry braille gift cards—as being unsupported by a plausible claim of injury. *Calcano*, 36 F.4th at 77-78. The *Calcano* plaintiffs, like Plaintiff here, merely attempted to recite a magic formula in their pleadings, asserting that they wished to make an online purchase from the defendants (gift cards

11

in the *Calcano* case, a health monitoring ring in the instant case).  Critically, the *Calcano* plaintiffs "never explain[ed] why they want[ed] those cards in the first place," and failed to plausibly establish that plaintiffs "intended to return" to defendants' places of business.  *Id.* at 76; *see also Harty*, 28 F.4th at 443 (allegation that "in the near future" plaintiff intended to "utilize the website to reserve a guest room" was insufficiently imminent to create an injury in fact).

Following *Calcano*, Courts routinely dismiss ADA website cases for lack of standing based on conclusory allegations similar to what Plaintiff alleges here.  *See, e.g., Velazquez v. Everlast Worldwide, Inc.*, No. 22-CV-9211 (VSB), 2022 WL 16745767, at *1 (S.D.N.Y. Nov. 7, 2022) (Plaintiff's "fail[ed] adequately to allege standing, as [the allegations] are at least as conclusory as the allegations in *Calcano*"); *Loadholt v. Dungarees, Inc.*, No. 22-CV-4699 (VEC), 2023 WL 2024792, at *2-3 (S.D.N.Y. Feb. 15, 2023) ("Plaintiff's allegations that he visited the website 'with the intent of shopping for and potentially making a purchase' of those items, and 'would still like' to return to the website to 'potentially purchase' the items, does no more to allege intent to return than the boilerplate allegations described in *Calcano*.").

### 1.    Plaintiff Has Not Plausibly Alleged an Intent to Return.

Plaintiff's allegations are insufficient to plead an injury in fact.  Plaintiff claims that he was unable to "complete checkout, review product specifications, and access terms of service" due to alleged access barriers.  (Am. Compl. ¶¶ 8, 33.)  While the Amended Complaint contains an added general allegation that Plaintiff "wants to make a purchase of an Ouraring" (*id.* ¶ 42), this broad and non-specific allegation is belied by Plaintiff's insistence that buying an Ouraring product remains simply "an option" and that he is "eager to return to the site once it is remediated," not that he will actually return.  (*Id.* ¶ 6.)  This type of generalized, non-specific intent is not the type of actual, concrete, and particularized harm required to survive a motion to dismiss.  *See, e.g., Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022) (dismissing

12

claims where Plaintiff did not allege "that he has some particular interest in purchasing chocolate from this particular vendor, or any other facts from which the Court could plausibly infer he intends to return to the website.").[3]

In addition, Plaintiff has not alleged a plausible timeline to suggest that he actually intends to return to the Website. Although Plaintiff alleges dates when he visited the Website, those dates are logically inconsistent. He alleges that he initially visited the Website on August 12, 2025 and on August 15, 2025. (Am. Compl. ⁋ 33.) But he also alleges that he returned to the Website on "subsequent occasions . . . including on August 5, 2025." (*Id*. ⁋ 44.) August 5 is not "subsequent" to August 12 and August 15, which raises plausibility questions, particularly as to when and whether Plaintiff actually visited the Website at all.

Pleading the intent to return to a website "is held to a more exacting standard." *Black v. 3 Times 90, Inc.*, No. 23-cv-06235 (NCM) (CLP), 2025 WL 1114610, at *3 (E.D.N.Y. Apr. 15, 2025) (slip copy) (dismissing ADA website complaint for lack of standing where plaintiff generally alleged his desire to revisit the website of a Chinese restaurant). An intent to return must be demonstrated by "non-conclusory, plausible factual allegations from which it is reasonable to infer, based on the past frequency of visits and the plaintiff's articulated interest in the products or services available on the website, that the plaintiff intends to return to the website." *Id*. This is a "highly fact-sensitive inquiry." *Id*. (quoting *Bernstein*, 621 F. App'x at 59). "And the bar has been further raised 'appreciably for adequately pleading standing to seek injunctive relief in ADA cases.'" *Id*. (quoting *Hennessy ex rel. Hennessy v. Poetica Coffee Inc.*, No. 21-cv-05063, 2022

---

[3] Likewise, Plaintiff's claims that "his family relies on him to coordinate health tracking" and that he "relies on Oura's website to monitor health developments, access support resources, and evaluate eligibility for subscription programs" is belied by Plaintiff's own admission. (Am. Compl. ⁋⁋ 42-43.) Plaintiff admits that he has only visited Oura's Website twice. (*Id*. ⁋ 33.) It is inconceivable that Plaintiff relies on Oura's Website for monitoring any type of information when he has visited the Website merely twice, and for a different purpose than monitoring information. (*Id*.) (stating that purpose of Website visits was to purchase a ring, *not* to monitor health information).

13

WL 4095557, at *4 (E.D.N.Y. Sept. 7, 2022)).   Plaintiff's conclusory (and contradictory) allegations fall well short of the exacting standard required to survive a motion to dismiss.

### 2.    Plaintiff's Copy-Paste Allegations Show There Was No Injury.

Curiously, while Plaintiff identified a specific Ring model he was searching for at Am. Compl. ⁋ 33, he also claims he was prevented from determining "whether the selected resources matched his family's health needs, were financially accessible, or were available for enrollment." (Am. Compl. ⁋ 38.)   This vague allegation has no direct relationship with the Oura Website. Plaintiff has not pled any facts about his family, their health needs, or how that relates to Oura. There is also no question that Oura's products are always generally "available for enrollment" and thus do not require Plaintiff to make a determination of availability.

Instead of applying to Oura, this allegation appears to be targeted to Plaintiff's ADA website lawsuit against AbbVie, which he filed on September 22, 2025, approximately a week before the Complaint against Oura.  That case included the exact same allegation that Plaintiff was "unable to determine whether the selected resources matched his family's medical needs, were financially accessible, or were available for enrollment."   (Holstad Decl. ¶ 4, Ex. B.) Plaintiff appears to have just copied and pasted this allegation into his Oura Complaint.  This copy-paste allegation further shows that Plaintiff's alleged injury is not plausible and that he did not suffer actual injury when visiting the Oura Website.

### 3.    Plaintiff Cannot Show Injury Resulting From Website Barriers Because Oura Products Are Widely Available on Third-Party Websites and In Stores.

Despite having the benefit of amending his Original Complaint, Plaintiff still has not articulated any specific need or desire to buy wearable health products from Oura's Website.  This is fatal to Plaintiff's Amended Complaint because Oura's wearable health products—along with countless other competitors' products—are widely available at other retailers online and in stores.

Plaintiff's failure to allege that he attempted to find Oura products (or other wearable health products) elsewhere "undermin[es] his claim that he will suffer future injury." *Black*, 2025 WL 1114610, at *5; *see Loadholt*, 2023 WL 2024792, at *3 (finding that plaintiff's alleged intent to return was undermined by failure to allege that he searched for and could not find comparable products elsewhere); *Toro*, 2023 WL 4624690, at *3-4 (finding lack of standing where plaintiff failed to allege that he could not buy sought-after product elsewhere). In a similar case, the Court in *Black* dismissed the plaintiff's claims despite allegations that he specifically wanted to visit the defendant restaurant's website prior to purchasing the defendant's food. *Black*, 2025 WL 1114610, at *3. This did not articulate a legally cognizable intent to return because, in part, the plaintiff was aware of other options for purchasing the defendant's food and did not allege that any website barriers prevented him from obtaining defendant's food from other sources. *Id*. at *4. "[P]laintiff has failed to show that he took any steps to obtain location and menu information for defendant's restaurants elsewhere. This failure, despite his interest in trying the food options 'immediately,' undermines his purported intent to return to the website[.]" *Id*. (internal citations omitted). Likewise, the Court explained in *Toro* that a claimed "intent on visiting the Website immediately if were made accessible" is "merely a legal conclusion couched as a factual allegation, and is thus insufficient to demonstrate an intent to return." *Toro*, 2023 WL 4624690, at *3 (internal citations omitted). That is all that Plaintiff alleges here.

In addition, the "facts raise serious questions with respect to the plausibility that Plaintiff suffered injury as opposed to manufacturing a claim." *Id*. Plaintiff alleges broadly that "his family relies on him to coordinate health tracking and subscription enrollment," Oura is the source for non-specified "device-specific resources, research updates, and account management tools," and that the Website publishes certain "time-sensitive content." (Am. Compl. ¶ 42.) These assertions

15

do not include any allegation or information as to why Plaintiff or his family needs a specific product from Oura as opposed to a different wearable health product, or even an Oura product purchased from a different vendor. For example, there are multiple retailers that sell Oura products online, including Amazon, Target, and Best Buy. (Stendahl Decl. ¶ 6.) There are also multiple Target and Best Buy brick-and-mortar shops in Bronx County where Plaintiff and his family could purchase such products. (Holstad Decl. ¶¶ 7-9.) This is critical here because Plaintiff claims that he wants to purchase a specific ring: the Oura Ring Horizon model. (Am. Compl. ¶ 33.) But this model of Oura Ring is currently no longer available for purchase on the Oura Website. (Stendahl Decl. ¶ 6.) It is, however, available for purchase at other retailers. (*Id.*) Thus, even if Plaintiff were sincere regarding his desire to purchase an Oura Ring Horizon model, he cannot do so utilizing the Website because the product is not available through the Website. Further, Plaintiff provides no information about his alleged family or how his coordination of their "health tracking and subscription enrollment" would require him to visit the Oura Website. (Am. Compl. ¶ 42.) He does not allege in the first instance that his family has any Oura devices or memberships that would necessitate his coordination via the Website.

In addition, Plaintiff incorrectly claims that "firmware releases, product launches, and support updates" are only available through the Oura Website. (*Id.*) In fact, Oura does not publish software or firmware updates for its products through its Website. (Stendahl Decl. ¶ 8.) And information about Oura's product launches and support updates is not exclusively available on the Oura Website. They are also available through the Oura app and other sources such as social media and third-party new sources. (*Id.*)

The Complaint here does not include any factual context that would make it plausible to suppose that Plaintiff actually intends to return to Oura's Website or has any bona fide intention

16

of otherwise becoming an Oura customer.  Plaintiff does not allege that he or his family have ever been a customer of Oura in the past or purchased any of Oura's products from other retailers.  And more importantly, Oura's products are available from many online and brick-and-mortar sources other than Oura's Website.  The fact that Plaintiff can freely access the specific product he claims to want to purchase from other sources makes clear that there is no specific harm.  *Toro*, 2023 WL 4624690, at *4.

**4.       Plaintiff Fails to Specify Where or How He Encountered the Alleged Barriers.**

The Complaint's plausibility is further undercut by its failure to identify the connection between the purported "barriers" suffered by Plaintiff and the purported "barriers" that existed on October 15, 2025, when Plaintiff's counsel allegedly conducted a scan of the Website.  The failure to allege more than generic allegations as to what specific pages contain specific issues is ground in and of itself to dismiss the Amended Complaint.  *Wahab*, 2025 WL 872112, at *4 (dismissing Complaint because "Plaintiff fails to allege that she personally encountered any of the barriers that the Website supposedly contains aside from one unspecified broken 'link of interest'").  Plaintiff's "generic allegations are so devoid of particularity that they can hardly be said to put Defendant on notice of the alleged defects with the Website."  *Id.*  While Plaintiff describes a purported list of barriers existing on October 15, 2025 (Am. Compl. ⁋ 47), Plaintiff does ***not*** allege that any of the issues identified in ⁋ 47 were actually suffered by him.

Similarly, Plaintiff includes a general allegation that an expert retained by him created a report and "determined that the accessibility barriers Plaintiff encountered still exist."  (Am. Compl. ⁋ 54.)  Notwithstanding that this allegation is not supported by any factual details, such as a declaration or the purported report itself, the allegation specifically does *not* include any factual assertion that Plaintiff attempted to access the Website following the work detailed in the Stendahl Declaration or that Plaintiff continued to encounter access barriers.

17

Plaintiff's broad claim that access barriers exist, without connecting the alleged barriers to the actions of Plaintiff himself, are the exact type of bare or technical allegations that do not equate to a concrete injury suffered by this specific Plaintiff. *See TransUnion LLC*, 594 U.S. at 424-30. The fact that Plaintiff relies on general allegations of Website barriers (from a time when he did not attempt to access the Website) and did not address any specific or detailed harm allegedly suffered by him, reflects that Plaintiff did not suffer any actual harm and that this lawsuit is merely another Carbon Copy Complaint that should be viewed with a critical and discerning eye. As observed in *Dominguez v. Grand Lux Cafe LLC*, where the Court was addressing a similarly generic ADA complaint that had been used in dozens of identical cases: "those who live by the photocopier shall die by the photocopier where they fail[] specifically to assert any concrete injury." 2020 WL 3440788, at *4 (internal quotations omitted).

Viewed in the larger context of the Carbon Copy Complaints, it is clear that Plaintiff visited Oura's Website, if at all, solely for the purpose of identifying a target against whom to bring this mass-produced lawsuit. Plaintiff has not shown any genuine interest in purchasing Oura's products under these facts. Accordingly, Plaintiff has not suffered a particularized or concrete injury in fact, and the Complaint should be dismissed under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

## III.   PLAINTIFF'S CLAIMS ARE MOOT BECAUSE OURA HAS REMEDIED ALL ALLEGED ADA VIOLATIONS.

If the Court determines that Plaintiff has standing, his claims should still be dismissed as moot. Even prior to being served with Plaintiff's Original Complaint, Oura was already focusing its resources and time to ensure that its Website was fully accessible to all people with disabilities. (Stendahl Decl. ¶ 10.) Oura had engaged a third-party vendor to assess its Website accessibility and remediate the issues identified by the vendor. (*Id*. ¶¶ 11-13.)

18

After receiving Plaintiff's Original Complaint, Oura analyzed and remedied each of the issues that allegedly impacted Plaintiff.  (*Id*. ¶¶ 14-16.)  Oura also researched WCAG 2.1 Guidelines.  (*Id*. ¶ 14.)  Specifically, Oura reviewed the Website's code and removed the barriers that would prevent the Plaintiff from purchasing a Ring or membership, reviewing product specifications, or accessing the Oura terms of use.  (*Id*. ¶¶ 16-17.)  On January 21, 2026, Oura ran manual screen reader tests using VoiceOver and determined that no accessibility issues existed that would prevent Plaintiff from purchasing a Ring on the Oura Website.  (*Id*. ¶ 18.)  In addition to the scan, Oura has also manually tested the purchase flow to ensure that there are no accessibility issues currently preventing a visually impaired individual from purchasing an Oura ring.  (*Id*.)

To further confirm the accessibility of the Website, Oura used the WAVE tool to confirm that all of the issues identified in the Original Complaint as impacting the Plaintiff were remedied, including:

- Empty buttons lacking descriptive labels have been given descriptive labels;

- Empty links that provide no context to screen readers have been added or deleted;

- Missing form labels obstructing navigation of interactive fields have been added;

- Images missing alternative text have been updated with text;

- Broken ARIA references disrupting semantic structure have been added; and

- Contrast errors that fail WCAG 1.4.3 minimum ratio standards have been fixed.

(*Id*. ¶ 21.)

Likewise, after receiving the Amended Complaint, Oura again reviewed the Website for any specific accessibility barriers alleged in the Amended Complaint to have impacted the Plaintiff.  (*Id*. ¶ 22.)  Oura again ensured that none of the barriers alleged to have impacted the Plaintiff remain.  (*Id*.)

19

Since Oura has worked to ensure that its Website is accessible and confirmed accessibility with testing, it has eliminated the risk accessibility issues in the future.  (*Id*. ¶¶ 22-23, 25.)  Therefore, no actual case or controversy exists, and the case is moot.  Because this case is moot, the Court lacks subject matter jurisdiction and must dismiss Plaintiff's Amended Complaint.

A claim shall be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.  *Cortlandt*, 790 F.3d at 416-17 ("A district court properly dismisses an action under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction if the court lacks the statutory or constitutional power to adjudicate it.") (citation omitted).  It is the burden of the plaintiff to demonstrate "that subject matter jurisdiction lies over the dispute." *Diaz*, 2019 WL 2357531, at *2; *Spokeo*, 578 U.S. at 338 ("The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements.") (citation omitted).  Moreover, "an actual controversy must be extant at all stages of review."  *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 (2013).  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during litigation, the action can no longer proceed and must be dismissed as moot."  *Id*. at 72.  Changes made by a defendant after litigation has begun can render a case moot when it is "it is absolutely clear the defendant cannot resume the allegedly offending conduct."  *Clear Channel Outdoor, Inc. v. City of New York*, 594 F.3d 94, 110 (2d Cir. 2010) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)).  In addition, "[t]he voluntary cessation of allegedly illegal activity may render a case moot 'if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'"  *Id*. (quoting *Campbell v. Greisberger*, 80 F.3d 703, 706 (2d Cir. 1996)).

20

Here, there is no reasonable expectation that the alleged violations will recur because Oura entirely addressed the Website accessibility issues alleged to have impacted Plaintiff. (Stendahl Decl. ¶¶ 11-28.) The Declaration of Benjamin Stendahl establishes conclusively that Oura (i) underwent a third-party evaluation of the Website and fixed identified accessibility issues, (ii) has specifically addressed and remedied the alleged access barriers Plaintiff claims to have encountered, (iii) has implemented processes, including automated processes, to ensure ongoing accessibility, (iv) will actively update its Website to ensure that it continues to be accessible, and (v) has processes and systems in place to comply with any new standards set forth by the WCAG in the future (or any other similar organization). (*Id.*)

As in *Diaz*, Oura began these remediation efforts even before being served with the Complaint. *See Diaz*, 2019 WL 2357531, at *5. Oura has demonstrated that it is committed to accessibility, has remedied all barriers alleged to have impacted Plaintiff, and that it will remain compliant in the future. Thus, there is no reasonable expectation that any of the alleged violations will recur in the future. *See Clear Channel Outdoor*, 594 F.3d at 110. As such, Plaintiff's claims are moot, and the Amended Complaint should be dismissed with prejudice because the Court lacks subject matter jurisdiction. *See F.O. v. New York City Dept. of Educ.*, 899 F. Supp. 2d 251, 255 (S.D.N.Y. 2012).[4]

Three cases, *Diaz v. Kroger Co.*, No. 18 Civ. 7953 (KPF), 2019 WL 2357531 (S.D.N.Y. June 4, 2019), *Guglielmo v. Nebraska Furniture Mart, Inc.*, No. 19 Civ. 11197 (KPF), 2020 WL 7480619 (S.D.N.Y. Dec. 18, 2020), and *Tavarez v. Extract Labs Inc.*, No. 21-CV-9916 (JPO),

---

[4] Should the Court grant this Motion, Oura will seek attorneys' fees pursuant to 42 U.S.C. § 12205. Because Plaintiff proceeded with claims that have already been shown to be moot, such conduct amounts to litigating frivolous, unreasonable, and groundless claims. Oura's counsel attempted multiple times to discuss with Plaintiff's counsel the mootness of Plaintiff's claims before bringing this Motion. (Holstad Decl. ¶¶ 5-6.) Plaintiff's counsel has refused withdraw his claims, causing Oura to incur additional unnecessary costs and fees. (*Id.*)

21

2023 WL 2712537 (S.D.N.Y. Mar. 30, 2023), are particularly instructive for the Court's mootness analysis here, as the facts alleged and subsequent remedial actions taken by those defendants are very similar to those asserted here.

In *Diaz*, the plaintiff, a visually impaired individual, alleged that the defendant's website was not compliant with WCAG standards and thus violated the ADA. *See Diaz*, 2019 WL 2357531, at *2-3. In response to the complaint, the defendant submitted an affidavit by which it explained that (i) it had undertaken to comply with the WCAG guidelines, (ii) the affiant personally made sure that all deficiencies in the website (that made it allegedly non-compliant) were remedied, (iii) the website was, in fact, now compliant, (iv) it would continue to keep the website compliant, and (v) it would to keep the website up to date with any new standards that may be established. *Id.* at *3. The court found these averments to be sufficiently specific and detailed to meet the showing required to establish mootness and, thus, dismissed the complaint. *Id.* at *5.

In *Guglielmo*, the plaintiff, also a visually impaired individual, alleged that he visited the website of the defendant, a furniture and appliance retailer, and was unable to make a purchase due to the existence of access barriers in violation of the ADA. *See Guglielmo*, 2020 WL 7480619, at *1-2. In response, the defendant argued that the claim was moot and submitted a declaration stating (i) prior to the lawsuit, the defendant had invested time and resources in improving the website's accessibility; (ii) the defendant had since remedied each of the ADA violations alleged by the plaintiff; and (iii) the defendant intended to commence a significant redesign of its website, to enhance accessibility. *Id.* at *6. The Court held that the defendant's declaration was sufficient to demonstrate that the claims were moot and dismissed the complaint. *Id.* (citing *Diaz*, 2019 WL 2357531, at *3).

In *Extract Labs*, the visually impaired plaintiff also alleged that he visited the website of the defendant, an online CBD and cannabinoid retailer, seeking to purchase cannabis-infused gummies which he was unable to complete due to access barriers that violated the ADA. *Extract Labs*, 2023 WL 2712537, at *1. The defendant moved to dismiss on the grounds of mootness, arguing that following the filing of the complaint the defendant had made its website fully compliant with WCAG 2.1. *Id.* at *2. The defendant "produced a supporting declaration representing this to be the case." *Id.* The court found that the defendant's declaration from a person "who has supervisory authority over the website [ ] provided a 'level of detail' that is sufficient to create a presumption of mootness" because it attested that (i) "Defendant had invested time and resources in improving the Website's accessibility," (ii) the defendant "remedied each of the violations alleged by Plaintiff," and (iii) going forward, "accessibility will be a central aspect" of the Website. *Id.* at *3. Furthermore, the declaration submitted by the defendant "(i) details the audit process that Defendant undertook to identify issues relating to Plaintiff's allegations; (ii) provides quantified examples of the audit's findings; (iii) observes that . . . few instances of the access barriers alleged by Plaintiff were actually identified; and (iv) attests that . . . Defendant's employees resolved each of the identified issues" in the complaint. *Id.* (citing *Guglielmo*, 2020 WL 7480619, at *6). The court also emphasized that the defendant confirmed that the alleged deficiencies were remedied, had employees involved in the remediation process, and committed to continued monitoring of WCAG developments. *Id.*

The Court should give no moment to Plaintiff's baseless assertion that an expert purportedly "determined that the accessibility barriers Plaintiff encountered still exist." (Am. Compl. ¶ 54.) Here, like in *Diaz*, *Guglielmo*, and *Extract Labs,* Oura has shown that it has invested significant time and resources into upgrading its website to remedy all of the alleged ADA

23

violations. (Stendahl Decl. ¶¶ 11-28.) Likewise, there is no reasonable expectation that these alleged violations will recur because Oura has now resolved any issues with the Website so that it specifically complies with WCAG guidelines. (*Id*. ¶ 25.) And Oura has established a process for ongoing compliance. (*Id*. ¶¶ 24, 26-28.) Therefore, Plaintiff's Amended Complaint is moot, and the matter should be dismissed with prejudice.

## IV.    DEFENDANT'S WEBSITE IS NOT A PUBLIC PLACE OF ACCOMMODATION.

Oura's Website is a standalone website, meaning that it is unconnected to any brick-and-mortar place of business. (*Id.* ¶ 7.) "[A] standalone website should not be considered a 'place of public accommodation'" because the ADA "does not explicitly address businesses without a physical location." *Mejia v. High Brew Coffee Inc.*, No. 22-CV-03667 (LTS), 2024 WL 4350912 at *6 (S.D.N.Y. Sept. 30, 2024). As a result, it cannot be inferred "that Congress intended 'places of public accommodation' to include websites — a newly developed business model — when the text of the statute excludes analogous business models by imposing a physical location requirement for an entity to be considered a 'place of public accommodation.'" *Id*.

The Second Circuit has not addressed this specific issue, but "[m]ost circuits to address the question have concluded that the ADA does not cover transactions divorced from any physical premises." *Fernandez v. Gainful Health, Inc.*, No. 25-cv-2696 (AS), 2025 WL 3538339, at *1 (S.D.N.Y. Dec. 10, 2025) (collecting cases from the Third, Sixth, Ninth, and Eleventh Circuits). Although there is some variation as to the approach in this District, several recent cases have held that such a standalone website—i.e., a website for a business without a physical location—is not a "place of public accommodation" under the meaning of Title III of the ADA. *See e.g.*, *id.* at *3 ("The Court therefore concludes that the ADA does not cover standalone websites. For that reason, Gainful's motion to dismiss Fernandez's ADA claims will be granted."); *Mejia*, 2024 WL 4350912, at *6; *Sookul v. Fresh Chan Threads, Inc.*, 754 F. Supp. 3d 395, 407-408 (S.D.N.Y.

24

2024). Because Plaintiff cannot allege an ADA claim against Oura's standalone Website, all his claims must be dismissed.

## V.    **PLAINTIFF LACKS STANDING TO BRING HIS STATE AND CITY CLAIMS.**

For the reasons stated above, because the same legal standards governing standing under the ADA apply to the alleged state and city claims, Plaintiff's remaining claims also fail and the Court should dismiss the Amended Complaint in its entirety, with prejudice.  *Kreisler v. Humane Soc'y of New York*, No. 16 Civ. 8177 (LGS), 2018 WL 4778914, at *8 n.5 (S.D.N.Y. Oct. 3, 2018) (granting dismissal with respect to some alleged ADA violations on the basis that the issue was moot, and concluding, "[f]or the same reasons," that the plaintiff "also lack[ed] standing to challenge the restroom and water fountain under the NYCHRL") (citation omitted).

## CONCLUSION

For the foregoing reasons, Oura respectfully requests that the Court dismiss the Amended Complaint with prejudice in its entirety.

Dated: March 30, 2026                                  WINTHROP & WEINSTINE, P.A.


                                                       *s/ Devon C. Holstad*
                                                       Devon C. Holstad (#5339221)
                                                       225 South Sixth Street, Suite 3500
                                                       Minneapolis, MN 55402
                                                       Tel: (612) 604-6400
                                                       Fax: (612) 604-6816
                                                       dholstad@winthrop.com

                                                       ***Attorney for Defendant***

42377361v1

25

## CERTIFICATE OF WORD COUNT

The undersigned hereby certifies that this Brief complies with the limitation in Local Rule 7.1(c) in that it contains less than 8,750 words. I further certify that this Memorandum of Law contains 8,129 words, excluding the cover page, index, table of contents, table of authorities, signature blocks, or required certificates, but including all headings, footnotes, and quotes.

Dated: March 30, 2026                                   WINTHROP & WEINSTINE, P.A.


                                                        *s/ Devon C. Holstad*
                                                        Devon C. Holstad (#5339221)
                                                        225 South Sixth Street, Suite 3500
                                                        Minneapolis, MN 55402
                                                        Tel: (612) 604-6400
                                                        Fax: (612) 604-6816
                                                        dholstad@winthrop.com

                                                        ***Attorney for Defendant***